Today is United States of America v. Alejandro Meza-Magallon. Mr. Schuman. Good morning, and may it please the Court. My name is Jacob Schuman, and I represent the appellant Alejandro Meza. May I please reserve three minutes of my time for rebuttal? Yes. Thank you. Mr. Meza was brought to this country by his mother when he was 14 years old. Three years later, he was arrested for breaking into empty cars with a friend and pled guilty to burglary. Then, without notice to his mother or any other responsible adult, he was transferred to immigration custody and deported. His mother only learned what happened to him when he called her to break the news from Mexico. This deportation violated due process because the government failed to notify Mr. Meza's known U.S. resident mother before finding him deportable and expelling him from the country. There's no regulation requiring her to be notified. There's nothing... That's right. There's no regulation. And why should that be within the concept of due process for someone who's not a citizen? Oh, well, I mean, the right to parental notification goes back to the Supreme Court's decision in Galt, which said that a 15-year-old facing a juvenile delinquency proceeding had rights to both him and his parents of the charges and the right to counsel in immigration. No, but that case, like so many of the other cases you cite, dealt with criminal matters. This is not a criminal matter. This is a civil matter. Actually, Galt was also a civil matter. It was a juvenile delinquency proceeding. And the Supreme Court said that the civil criminal distinction was irrelevant to the question because of the awesome consequences of a delinquency finding, which was confinement in a reformatory until age 21. And deportation is probably the second most severe consequence that can be imposed on someone in our judicial system after criminal punishment. And in fact, the Supreme Court noted that in some cases, someone might actually prefer to go to prison rather than to be expelled from the country and barred from readmission for five to 20 years. How could he effectively have even exercised that right? How could he be prejudiced since he couldn't notify his mother? His mother was here illegally herself. That's not in the record, actually. We don't know what his mother's immigration status was. I think that was part of what I read in the record or the briefing, at least. I don't think that's right, Your Honor. I may be mistaken. But regardless, he gave the immigration officer his home address. So it would not have been difficult for the government to send written notice to his mother at his home address. I think it's a safe assumption that a minor is living with their parents. Or what the district court in the Perez-Funes case required was that before a minor consented to voluntary departure, before someone under 18 consented to voluntary departure, which is a less harsh sanction than removal, they had to have a mandatory phone call with the responsible adult outside the government. And so that that might have been enough in this case. And certainly the government could have ensured at least that. And if you are just right. What do we do with the observation that the record reveals that there's a mega young intentionally misled Agent Varga with respect to the age of 18? So what the district court found is that Mr. Meza intentionally gave the wrong 1983 birthday. And he said, we have no idea why he did that. And indeed, we don't. But the immigration records in this case, every single record that the immigration officer checked on Mr. Meza included the correct 1984 birthdate. The Treasury enforcement records listed twice, pages 215, 216 of the appendix. The Immigration and National Naturalization Services own records list it once. That's page 218 of the appendix. And the FBI records actually list the 1984 birthdate as the correct birthdate. And then list the 1983 birthdate as another birthdate. So have the immigration officer check those records and notice the discrepancy. Then he would have had to do further inquiry to confirm whether or not Mr. Meza was a minor and should be entitled to the right of parental notification. This is the exact situation that the Ninth Circuit addressed in the juvenile mail case. So in that case, you had a Mexican national who gave a birthdate that made him look like he was 18. But the government had records showing that he was actually 17. And the government just went with the 18 birthdate. And the Ninth Circuit said, you can't do that. When you have reason to believe that the person might be a minor, then you need to go do more and confirm their age or else afford parental notification. And that's very important because the whole point of parental notification is that minors sometimes make decisions impulsively, irresponsibly, that are to their detriment. And we want to protect them for that. I'm sorry, is the agent always on notice then that they must check? The agent isn't necessarily always on notice. If they didn't have the right birthdate in their records, this would be a very different case. But in this case, every record they checked had the correct birthdate. And so they had to know what the correct birthdate is. There's a conflict in the evidence on that. That's right. So what the Ninth Circuit suggested, that when you have a conflict like this, you can get in touch with the parents and that can confirm or refute the birthdate. Or you can just check with the consulate to determine whether or not the person's a minor or not. Assuming that the parents should have been notified, the prejudice which you claim is that he was definitely deportable, no question about it. He was not here with permission, but he could have sought voluntary departure. That's the point. The only prejudice he has here is that he could have gotten or sought voluntary departure. Based on his record here as an alien, there is no way in this case that any immigration judge would have granted voluntary departure to this man. I respectfully disagree, Your Honor. The record shows he has one conviction for getting in a fight, one conviction for breaking into empty cars. And then there's an allegation that he had a gang affiliation. But I've been here a couple of years. A couple of years. He wasn't here a very long time. Well, how many years? Most of his adolescence. How much school did he attend? He did not attend school. He was for how many years? He did not attend school while he was in the United States. And how long was he? Was he in the United States from time of entry until the time? Approximately three years. And so he's a minor in the United States for three years and he's never been to school. Yeah, he's been working. He was getting paid six dollars an hour as a laborer. Well, what he was being paid was not a job that had any recognized job. And he was doing something off the record. That's true. And we cite in our brief three cases from the BIA reversing denials of voluntary departure in comparable circumstances. One where the person had a serious drug conviction and the BIA reversed the denial of voluntary departure because he was 18 at the time of the conviction. But the cases you cited were people that were here for many, many more years that had a much different state while they were here. Your cases are a few years, no schooling and nothing of any significance. As you say, he's a member of a gang. Well, we don't know about his extent of his association with the gang. What did he say? Was he questioned about whether he was a gang member? And if so, what did he say? We have no idea what went on between him and the immigration officer. The immigration officer wrote in the notice to appear that he was a self-admitted gang member. We don't and we don't know anything more than that. But, you know, what these cases indicate, these BIA cases that we said that doesn't count for anything. It's certainly a negative equity. But as against that, he was brought here by his mother when he was 14. You know, he had family ties here. He spoke a bit of English. He was working and he had two, I would say, not super serious convictions on his record. Nothing suggesting gang activity, certainly. And, you know, when we have BIA cases that I think are comparable, if not directly on point, the IJs get a lot of discretion to decide voluntary departure. Someone's got two convictions in three years. That's pretty good. I mean, in the Perla case, which we said in our brief, the person had pendant criminal charges. And the court said that he'd been in the country for a while and he had family ties. So my point is that these are cases where the BIA reversed an IJ denying voluntary departure. And they're at least comparable to this case. And all we have to show is that there's a reasonable likelihood that he would have been granted voluntary departure. Not that he definitely would have been granted voluntary departure. But if you can find one or two or five cases nationally, that rises to the level of reasonable probability? Well, given that IJs have so much discretion to make these decisions, and when the BIA reverses a denial of voluntary departure, I think what that shows is that this case is in the heartland of what should be granted voluntary departure. Even if there are hundreds or thousands of cases going the other way? I don't think there are. I mean, the government hasn't cited a single one. So what we've shown is that the IJs, despite all the discretion they have, when they deny voluntary departure because someone has a serious drug conviction, that's wrong if the person's under 18. Or sorry, the person was 18 at the time of the conviction. So what these cases teach us is that youth is a powerful mitigating factor when you're weighing whether or not to grant someone voluntary departure. And it should have been granted here. And in fact, the district court committed a real error here when it said that one of the reasons he wouldn't have been granted voluntary departure is that he was unmarried and had no children. Well, that's the condition of being young. And in fact, that's a positive equity, not a negative one. Let's go back to the youth issue. Isn't it the case under current case law that minors of certain age, similar to your client's age, are capable of waiving important constitutional rights? Even minors who are citizens? It is not the case. Minors cannot waive any right comparable to their right to challenge a claim or removal. That wasn't my question. My question was, isn't it the case law that minors can waive, citizen minors, can waive important constitutional rights? You know, important, subjective. They can certainly waive certain rights. Which ones can minors waive? In the Reno case, the Supreme Court said that an unaccompanied minor, that means a minor without. Which rights can minors waive? Which constitutional rights? Just slow down a little. Their right to challenge an initial. Yep. Slow down. Which constitutional rights can minors waive under current case law? Their Miranda rights. Okay. Anything else? Their right to appeal, their right to a jury trial, and their right to challenge the initial custody and deportability determination. Okay. So let's start with Miranda. Sure. Right to self-incrimination. Yeah. So a minor can admit to committing a first-degree homicide or multiple first-degree homicides, can confess to that, and waive Miranda rights. Yeah. That's quite different than waiving your right to challenge. That's more, that's less serious than the rights that your client waived? Yeah, absolutely. If you talk to the police despite your right not to, you might give up incriminating evidence, and that might lead to a prison term or not. You might give non-incriminating evidence. It's sort of a preliminary waiver. But when you waive your right to challenge a final order of removal, he gave up any right to challenge that deportation order. He gave up his right to appeal it, and it resulted in him being expelled from the country three weeks later. So when you just consider what processes do, you have to consider the private interest at stake, the risk of error, and the burden on the government. That's Matthews v. Eldridge. And the private interest at stake is much higher in this context than it is in Miranda. The burden on the government is also lower in this context. The government has a legitimate interest in getting people to waive their Miranda rights and investigate crime, and stopping to notify the parents would put a real burden on the government. But that's not the case here. All they had to do was keep Mr. Mez in detention a bit longer and then notify his mother and see what happened next. As for the right to appeal and the right to waive a jury trial, you have a right to counsel in those situations, appointed counsel. So in that case, you do have a responsible adult helping you make these big decisions. Mr. Mez was all by himself, 17-year-old in immigration custody, hadn't spoken to any responsible adult outside the government, and he gave up his right to challenge a final order of removal which expelled him and barred him from returning for five to 20 years. And if you think about it, parental notice is the most important right a child can have. I anticipate my friend is going to talk about whether or not a minor can validly waive their right, knowingly and voluntarily waive their right to challenge their removal, but parental notice is broader than that. Mr. Mez couldn't even exercise the rights he did have without parental guidance. For example, Mr. Mez had the right to an attorney, but how is an adolescent supposed to figure out how to link up with an attorney, how to get the money to hire an attorney without a responsible adult to help them? So it's really the most important right a child has because it's prerequisite to exercising their other rights. I'd also argue that, you know, given minors' irresponsibility and immaturity, they're not capable of exercising a valid waiver of their rights. But I'm out of time, and I'll save the rest for rebuttal. Okay, we'll hear you on rebuttal. Thank you, Mr. Schuman. Ms. McKeon? Yes. Good afternoon, Your Honors. May it please the Court, Bernadette McKeon for the government. The district court correctly denied the motion to dismiss the indictment on the ground that the 2002 deportation proceeding was fundamentally unfair and violated the defendant's due process rights. The district court's ruling can be affirmed on two separate grounds. Number one, that the underlying deportation proceeding was not fundamentally unfair. If the court were to reach that determination, we don't need to consider prejudice. If the court were to find that it was fundamentally unfair, there's another requirement, a second requirement, that he demonstrate prejudice. Here, there is no allegation that the defendant did not knowingly and intelligently and voluntarily waive his rights to challenge his deportation proceeding. The sole claim is that the government did not notify the parent of the alien who identified himself as being 18 years old before proceeding and accepting his waiver to challenge his right to deportation. That does not violate due process. As the district court found, it was not fundamentally unfair. We need to focus on that. How can you come to the conclusion that didn't violate due process? He's a minor. He hasn't reached 18 yet. They had indications that he was not 18, and they never notified his mother or any adult. That's a violation of due process, even for someone who's here and not a citizen. Well, let's dissect that. First of all, as Your Honor noted, there's no, the INS has no regulation that requires That doesn't make any difference. There's no regulation. Your adversary acknowledges that, but this is a right that he has under due process of law. First, we'll start with the fact that he lied, and he lied to the agent. He represented that he was 18, and under the circumstances present here, the agent acted reasonably in relying on that representation. Well, now, just a minute. That he lied, you're putting the cart before the horse. The fact that he lied, that's the reason why you have parental notification, because it's recognized by due process and under the law in so many areas that people who are infants or have not reached their majority, I should say, do not have a well-developed brain as to many things that adults have and that they have the right to have parental notification. So the fact that he lied proves the reason why they have parental notification in the first place. Well, I would disagree with that, Your Honor. Here, this defendant was less than one month short of his 18th birthday. He had just been prosecuted as an adult for burglary. He was in an adult county prison. But you can't get over the fact that he was not 18 yet. That's the cutoff date. He factually was not 18. The agent did not reasonably accept his representation that he was 18. That's the same birthdate that he gave to the DuPage County authorities when he was prosecuted for burglary. We want to go to the fact that he lied. Everyone acknowledges he lied. But the point is the reason for parental notification is because people and adults do lie a lot quicker than they should. Your Honor, the reason that doesn't violate due process here is because a 17-year-old can knowingly and voluntarily waive his constitutional rights. And that's what happened here. And the district court's findings are unassailable on the fact that this was a knowing involuntary waiver. The sole complaint is had his mother been contacted that she would have advised him to do something differently. But the only thing that they can identify that would have been done differently was that he may have applied for the right to voluntarily depart. But that does not establish that this is a due process violation. If you go back to the Torres case, for example, there they found that it was not a fundamental defect when somebody was effectively deprived of the right to apply for discretionary relief. The district court here found that as well and said there's no fundamental defect here because the only thing that they can identify as potential prejudice from failing to notify the mother is that he was denied the right to apply for discretionary relief. Torres held unequivocally that that was not a due process violation. But we have to take this one step further because the complaint here is that the procedural defect is the failure to notify the mother. But what would the mother have done? The only thing they can identify that would have possibly changed the outcome of this proceeding is that she would have advised him to apply for the discretionary relief of voluntary departure. Do you agree that, I assume you don't, but if my assumptions are right, tell us why. Why is this less severe than a minor waiving Miranda rights? This is less severe because, first of all, this is, to go back to the Juvenile Delinquency Act cases and Gault, my colleague here relies and cites heavily the law that's developed in the juvenile delinquency area. And the court in Gault actually said that a penalty which will result in your incarceration in a state, I won't use the word incarceration, your commitment to a state institution for a number of years is the equivalent of a felony offense, a criminal felony prosecution. Gault made it clear that the reason that all the due process procedural protections that apply to adults should be extended to juveniles. In Gault, they actually recognized that a juvenile could waive the right to self-incrimination, which means that they could, as in the Michael C. case, a 16-and-a-half-year-old confess to first-degree murder. He was allowed to do that even though he had asked to consult with his probation officer. They continued the interrogation. They found that that interrogation was knowing involuntary under the totality of the circumstances test. That juvenile had not contacted his parent, and there was no suggestion that that was required in order to accept that waiver. Now, as a result of Gault, the Juvenile Delinquency Act was passed. And the reason that juvenile mail really has no impact here, the 2010 Ninth Circuit decision, regarding the parental notification requirement, the statute requires parental notification. It explicitly states, remember, this is when a juvenile is arrested and facing a criminal charge. Yes, it will be processed through the juvenile system and not through the adult system, but it's a criminal charge. And as a matter of fact, in juvenile mail, the criminal charge was that he was smuggling aliens into the country. He happened to be an illegal alien, but there was a criminal aspect to that case. They applied the Juvenile Delinquency Act, and they said this requires parental notification. And if they didn't do it, then that's the end of it. That is a violation not of due process. They went on to consider prejudice. What happened in juvenile mail was the juvenile mail confessed. And the court didn't say that's the end of the matter, that this is a due process violation. They said he has to show prejudice, and that's exactly what we have here. He has to show prejudice. So the Juvenile Delinquency Act cases are very different. There are statutory requirements there, parental notification. There is no equivalent in the civil deportation context. And yes, it is a dramatic consequence. In effect, you'll be removed from the country, but that does not mean that that right extends here. So that without a regulation, a constitutional requirement, if a juvenile can waive their right, waive their right to incriminate themselves in a murder without first having consulted with a parent, or the parent being contacted, certainly they can waive their right in the deportation process without parental notification. So does that mean that the appropriate test is just for the trial fact, the trial court, to evaluate whether the waiver was knowing intelligence? That's correct, Your Honor. And there could be situations where the waiver, where parental notification, perhaps not parental notification, but where the waiver would have been found inadequate because let's say they had a 14-year-old, not a 17-and-a-half-year-old, who the circumstances, you know, the circumstances relating to the waiver showed that he did not have the ability to waive those rights, or he didn't understand those rights. There's nothing in this record. His rights were explained to him in Spanish. Although the judge found much of his testimony, meaning the defendant's testimony, incredible about certain aspects of the waiver process, the judge found that it was knowing and voluntary, and that's not charged. What about gang membership? Was there a finding of fact on that or not? According to Mr. Schuman, it's not clear. It's disputed. It was just a note from Agent Bardis. The gang membership on pages, and this is on pages 207 and 257 of the appendix, in both places Agent Bardis wrote down claimed gang member or known gang member. He said that the reason he was sent in to interview this person based on looking at the records, he had no independent recollection, was he was assigned to the Chicago Violent Task Force, a gang task force that dealt with immigration, potential immigrants. And so he was actually believed that he was sent there to interview the individual. The judge noted the gang affiliation, I believe, and I think the judge made a finding. Well, the judge credited Agent Bardis' testimony regarding the events. How about the mother not being a citizen herself? I got that from the record somewhere, I thought. Well, again, we're going back to the 2002 records. And the 2002 record created by Agent Bardis contemporaneously with his interview of the defendant stated that he claims a legal alien mother, and then it has his mother's name in SAUSA, which is suspected to be in the USA. So that was the information that was known, was that she was there illegally. There's no representation on those records that the defendant told the agent that he came into the country with his mother. That all came out in 2018 at the hearing that he said that he said, I came to my mother to the country with my mother at that time. So what shows up and what appears in the record is that he had an illegal alien mother residing somewhere in the United States, that his father was still in Mexico. So that notification of the mother would have been futile. There's no way if she had been notified, she would have been arrested herself. Well, we don't know that, Your Honor. She's not going to take a notice. There's certainly that possibility. I think the fair way to look at it is to say they could have notified the mother. And first of all, we're not even 100% sure where she was. There's an assumption that she lived at the same address that he provided. They could have notified some other responsible adult. The problem with your entire argument is that, yes, there's no regulation saying you have to notify a parent concerning this type of proceeding. However, even the Immigration Service itself recognizes that when someone is under 18, they notify the parent. They themselves enforce that without any regulation requiring recognizing that that is a due process right. No, Your Honor, that's not correct. And there are cases holding that they have no obligation to reach out and notify a parent, even a parent or a responsible adult, even when that child, the Fifth and Eighth Circuit had held you don't even have to do that when you have released that child or that juvenile to the custody of that adult. The regulations only require notification of an adult or a parent or another comparable adult if the child's under 14. But the proceedings that the Immigration Service follows itself, and they recognized it in this case as well, didn't follow it because they lied to them, is that when you're under 18, they notify parental guardians. I don't know where that appeared. That does not appear in the record, Your Honor. That's what happened here. They would have notified someone if he didn't say he was 18. They would have reached out. I think that that is, first of all, not in the record. I did ask and I discussed this with my folks. Well, what's the reason for them to get consent? They don't need consent if they don't have to notify. What's the whole thing is about? We're arguing here is that they didn't reach out, and that's the entire basis of the argument. But what they did not reach out to the mother, of course, because they didn't know he was under 18, but there's also nothing in the record that says that they would have reached out to the mother. What I was told, and again, this is not in the record and the Court need not consider it, was that they would not have accepted the waiver. They would have had him appear before an immigration judge at that juncture, instead of accepting the waiver from the individual first. Whether it's before the immigration judge or whatever. The service itself follows that procedure, and they recognize it without a regulation. It's correct in the sense that the deportation and release regulations would have kicked in if they knew he was under 17, and then the service would have decided whether to detain him or whether to release him to a responsible adult would have made efforts to find him. I note that on a practical level, and we are talking about due process here, is that this defendant, by the time they went through that process, would have been 18. He was 26 days short of his 18th birthday. So on a practical level, maybe they would have taken that course of action, but that's not a violation of due process. This has to violate his due process rights, and that means not only does he have to show the violation, but that he was prejudiced by the violation. And that's where he, again, the district court made findings. The findings are very comprehensive. He had not demonstrated that there was a reasonable likelihood that he would have been granted voluntary departure. He had to show that he had a reasonable likelihood that he would have been allowed to self-depart. He was a good candidate to self-depart. That's what that means. That was not a finding that was made. That he would not have been granted voluntary departure. The district judge found there was no fundamental defect because, again, we're talking about a discretionary right here and not anything that rose to the level of a due process deprivation. Went on to consider whether he was prejudiced by the alleged defect. But in the immigration situation, no such finding was made. No, because he didn't avail him. He weighed his right to seek voluntary departure. Their claim is, had mother been advised, she would have come to him and said, or sent a retained counsel and sent counsel to represent him to say, you should apply for voluntary departure. That's the only possible relief from deportation that he had. Is it clear that the waiver that he signed and the explanation he got recited all of the negative consequences of the waiver? That he would not be eligible for voluntary removal and that five to 20 years would be a five to 20 year bar on reentering. It definitely advised the defendant that he would not be able to avail himself of discretionary relief. Whether it included that exact language, I would have to check the record. I know there's no allegation that it was defective that the waiver was defective on that basis. I mean, the district judge considered whether he weighed not only his right to challenge the deportation, but to seek discretionary relief and found that the waiver was, this isn't a case, there's a lot of cases out there where there's a failure to tell the individual, usually in front of an immigration judge, they forget to say, by the way, you could apply for voluntary departure. And in those cases, that's not this case. He was adequately advised of his right to seek voluntary departure. And I would just sum up by saying, you know, it's the government's position, this is not a fundamental defect, it did not violate due process, the totality of the circumstances. And finally, that this court could affirm the judge's decision on the issue of prejudice alone. Thank you, Ms. McHugh. We'll hear a rebuttal from Mr. Schubert. Thank you. I need to start by correcting my friend on what she said about the Torres case. What Torres said is that when an immigration judge makes an error of law in finding that someone's not eligible for discretionary relief, that's not enough to show prejudice. But then in Charleswell, which is the key case from this court on the issue, Charleswell held that when an immigration proceeding violates due process, and as a result, the person misses their chance to seek discretionary relief, that is prejudice. And in fact, every court to consider it has said that that is prejudice. That's on page 362, footnote 17. So for the prejudice standard, I hope this court will look at Charleswell. Hold on a minute. On Charleswell, we said that the proceeding still has to be rendered fundamentally unfair, right? Right. So what Charleswell said is that if there's a due process violation during the proceeding, and as a result of that violation, the person misses their chance to seek discretionary relief like voluntary departure, that makes it fundamentally unfair. And that's the standard we'd ask this court to apply here, and that's the standard that governs. But that depends on how our prejudice analysis comes out. But what Charleswell said is that missing your chance to apply for discretionary relief, footnote 17, missing your chance to apply for discretionary relief is prejudice. And my friend suggested that Torres says otherwise, but Charleswell is the governing precedent. Missing the chance to apply for discretionary relief is prejudice, even if a finding is made that the discretionary relief would not have been forthcoming. So you still need to show a reasonable likelihood that you would have been granted discretionary relief. Right. Well, and here, I mean, you kind of glossed over the gang membership, but I was looking at Judge Surik's opinion, and I mean, there's a finding here, in his opinion, that your client was a self-admitted member of the Bensonville, Illinois, Serrano's 13th Street Gang. Was there not? Yeah, and that comes from the notice to appear, which says he was a self-admitted member, and my argument is that that. And what in the record factually countermands that? Nothing. We're not disputing that he said that at all. I'm not disputing that he may have had some affiliation with that gang. All right. So how do you get over the prejudice hurdle, then? The fact that he was only 17, that he came here as a child with his mother, that his criminal record was not particularly aggravated, and these BIA decisions show that even someone with involvement in the criminal justice system, that's essentially outbalanced by the fact that they're young. You know, my friend talked about the juvenile mail case, and she distinguished it because she said that's a statutory case, and that's true. But that case turned on the logic of parental notification, which is that if you're too immature to navigate legal proceedings on your own, that means you can't waive your right to parental notification by misrepresenting yourself as an adult. And in fact, the Juvenile Delinquency Act was enacted, as my friend said, in order to implement the Supreme Court's ruling in Galt, which was a constitutional case. So the Juvenile Delinquency Act does have a constitutional basis. Your adversary says that under due process, your client has no right to parental notification under the age of 18. What's your position as to his right to that notification? I mean, I think that's wrong. There's no regulation requiring parental. Right. So how does it come out of due process of law? Well, so Galt establishes the right to parental notification under due process. And then when you're trying to decide what the age limit should be, the traditional age of majority is 18. The Immigration and Nationality Act describes minors as people under 18. The immigration regulations define a juvenile as someone under 18. The parental notification cases that we cite involve adolescents between the ages of 15 and 18. Perez-Funes is a 16-year-old. Galt is a 15-year-old. Flores-Chavez is a 15-year-old. And the Supreme Court's decisions in Roper and Graham teach us that adolescents are still children in many ways. They still are impulsive and reckless and irresponsible. And that's why they need adult guidance. That's all true. But what do you have in the record to show that your client's waiver was not knowing and voluntary? Is there anything? Well, two points. Or is it just sort of the de facto, he's a minor? Yeah, I mean, I think as a matter of fact, though, it's involuntary. Well, I would say, yeah. As a matter of law, I don't think people under 18 can knowingly and voluntarily waive their right on such an important issue. But there's no case law for that, really. I mean, I guess you're relying on the Ninth Circuit case law. Yeah, and also I would say that the point of parental notification is that a minor might knowingly and voluntarily waive their right in a way that's detrimental to them. And that's why we want to have a parent involved in the process. He might have understood that by signing this waiver he was going to get expelled from the country. He might have intellectually understood that and just thought, I want to get out of detention as soon as possible. But that would be quite an irresponsible decision and one that's indicative of youth. And so we want a parent in there. But aside from the voluntary knowing and intelligent issue, he was unable to exercise his rights in this proceeding because he was under 18. He couldn't get the money together to hire a lawyer. He couldn't even begin to understand how to get one because he's a minor. The government says that a 15-year-old can waive their right, according to the government's theory, to challenge their deportation. In that circumstance, I can't imagine how a 15-year-old would begin to be able to exercise their rights. So, you know, I don't think they can voluntarily, knowingly, and intelligently waive their rights. But even aside from that, parental notification is the most fundamental right for a child in order to be able to. Well, how can we allow the waiver of fundamental rights in criminal proceedings? Why should that also a fortiori be in this proceeding, which is like a civil proceeding? In criminal proceedings, you have appointed counsel. So you have an adult helping you make these decisions. But Mr. Meza was all by himself. Why did you waive Miranda? Well, I mean, the Supreme Court in J. Lee made clear that deportation is, in some contexts, worse than a prison sentence. And so, you know, it must be that deportation is a more serious waiver than Miranda. The last point I'd like to make, if the Court permits, is that my friend said that it was not unreasonable for the agent to rely on the representation that Mr. Meza gave him. Well, I do think it was unreasonable, given that every record the officer checked showed the actual birth date. The biographical information is critical for the agent to look through when they're processing someone for deportation. They've got to make sure they have the right person. And so, you know, given the contrary evidence here, it was not reasonable for the officer to adjust on that. Thank you. Thank you, Mr. Shuman. Thank you, Ms. McKeown, for the excellent argument and briefing. We'll take the matter under advisement.